UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **JOE N. PRATT INSURANCE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-07-07** |
| | § | |
| **DONNA EASLEY DOANE, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court are defendants Trinity Universal Insurance Company,[1] Kerry Lott and Jim Strahan's (collectively, "Trinity Defendants") 12(b)(6) Motion to Dismiss Plaintiff's First Amended Original Complaint for Failure to State a Claim Upon Which Relief Can be Granted (Dkt. No. 24) and defendants Donna Easley Doane d/b/a Easley Insurance Agency, Judy Turner, Donald Easley and Margaret Easley's (collectively, "Easley Defendants") Motion to Dismiss Amended Complaint (Dkt. No. 25). Having considered the motions, responses, replies, record and the relevant law, the Court finds that the motions should be granted in part and denied in part.

### Background and Procedural History

This case arises out of the alleged theft and/or misuse of Plaintiff Joe N. Pratt Insurance's ("Pratt" or "Plaintiff") financial and business information. Pratt claims the Easley Defendants, several of whom are former Pratt employees, stole and/or conspired to steal Plaintiff's proprietary information to compete with Pratt for its customers while establishing a competing insurance agency, the Easley Insurance Agency ("Easley Insurance Agency"). Pratt alleges the Easley Defendants shared the proprietary information with the Trinity Defendants, who, in turn, used the information to provide

---

[1] Plaintiff has substituted Trinity Universal Insurance Company for Unitrin, Inc. *See* Dkt. No. 17 ¶3.

underwriting for the Easley Defendants' clients, many of whom were former Pratt customers.  Plaintiff also maintains the Easley Defendants fraudulently misled Plaintiff's customers into switching their insurance agent from Pratt to representatives of the Easley Insurance Agency.

More specifically, Plaintiff alleges Donna Easley Doane ("Doane"), a former Pratt employee who started the Easley Insurance Agency, copied thousands of Plaintiff's documents containing confidential customer information as she left Pratt's employment.  Doane purportedly used the information contained in the copied documents to issue quotes and eventually acquire many of Pratt's former clients.  Plaintiff claims the Trinity Defendants knew of, encouraged and assisted Doane's actions.  Plaintiff contends co-defendants Donald and Margaret Easley (the "Easleys") aided and abetted Doane's tortious conduct by allowing her to store the copied documents at their house.

Plaintiff further maintains Judy Turner ("Turner"), a former Pratt employee who now works for the Easley Insurance Agency, surreptitiously collected Agent of Record forms[2] from Pratt customers while she was employed by Plaintiff.  Pratt claims Turner, as part of a conspiracy permeating the Easley Defendants' actions, misled Plaintiff's customers and sent fraudulent Agent of Record forms to companies who provided insurance to Pratt's customers.

Based on the foregoing, Pratt filed its Original Complaint ("Plaintiff's Original Complaint") (Dkt. No. 1) on January 12, 2007, bringing numerous claims against the Trinity Defendants and the Easley Defendants (collectively, "Defendants").  The Defendants timely moved pursuant to FED. R. CIV. P. 12 to dismiss all claims raised against them in Plaintiff's Original Complaint.  *See* Dkt. No. 11; Dkt. No. 14.  While the motions to dismiss were pending, Pratt filed its First Amended Original Complaint ("Plaintiff's Amended Complaint") (Dkt. No. 17) reasserting the claims raised in Plaintiff's Original

---

[2] Agent of Record forms are documents signed by the insured authorizing an insurer to change the insured's account to a different agent.  *See* Dkt. No. 17 ¶40; *see also Walter v. United Farm Family Mutual Ins. Co.*, No. IP02-0822-C-T/K, 2004 WL 1629549, at *4 (S.D. Ind. April 7, 2004).

Complaint and adding a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.* In an April 4, 2007 Order (Dkt. No. 20), the Court held that the Defendants' motions to dismiss should be denied as moot due to Plaintiff's Amended Complaint, which appeared to re-plead at least some of the claims underlying the then-pending motions.

Plaintiff's Amended Complaint brings the following claims against both the Trinity and Easley Defendants: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*; (2) violations of the CFAA; (3) misappropriation of trade secrets; (4) violations of the Texas Theft Liability Act ("TTLA"), TEX. CIV. PRAC. & REM. CODE § 134.001, (5) breach of fiduciary duty; and (6) tortious interference with contract and prospective contract. Plaintiff's Amended Complaint also brings a breach of contract action against Turner and alleges the Trinity Defendants are liable based on agency, aiding and abetting, ratification, vicarious liability and conspiracy grounds. Defendants seek dismissal of Pratt's claims as discussed below.

### Standard of Review

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). The court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S.

69, 73 (1984); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998) (quoting *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994) (citation omitted)).  Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998).

Motions to dismiss for failure to state a claim are viewed with disfavor and rarely granted.  *Doss v. South Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The function of a complaint under the Federal Rules is to give the defendant fair notice of plaintiff's claim and the grounds upon which plaintiff relies.  *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  When presented with a Rule 12(b)(6) motion to dismiss, the district court must examine the complaint to determine if the allegations provide for relief on any possible theory.  *Id.*

### Discussion

### A.  Failure to State a Claim Under RICO

Congress enacted RICO in 1970 to combat organized crime through both criminal prosecutions and private suits.  *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1000 (S.D. Tex. 1995); 18 U.S.C. § 1961 *et seq.*  RICO's "legislative history forcefully supports the view that [its] major purpose . . . is to address the infiltration of legitimate business by organized crime."  *United States v. Turkette*, 452 U.S. 576, 591 (1981).  Section 1964(c) of RICO provides plaintiffs a private cause of action:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

4

18 U.S.C. § 1964(c).

"RICO claims under § 1962 have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). The second element—a "pattern of racketeering activity"—consists of two components: (1) predicate acts (the racketeering activity) and (2) a pattern of such acts. *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993). A "pattern of such acts" requires a plaintiff to plead both: (1) the predicate acts are related to each other and (2) they either constitute or threaten long-term criminal activity. *Id*; *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). A plaintiff must also plead sufficient facts to comprise a violation of the substantive RICO subsections, §§ 1962 (a)-(d), the plaintiff accuses a defendant of violating. *Abraham*, 480 F.3d at 355.

**1. Failure to Allege Defendants Committed Predicate Acts or Engaged in a "Pattern of Racketeering Activity"**

Pratt alleges the Defendants violated 18 U.S.C. § 1962(a), (b), (c) and (d). The Defendants seek dismissal of Pratt's RICO claims on the basis that Plaintiff has not sufficiently alleged a "pattern of racketeering. "

A pattern of racketeering within the meaning of section 1962 "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). RICO refers to the requisite "acts of racketeering activity" as "predicate acts." *See FMC Int'l A.G. v. ABB Lummus Global, Inc.*, No. Civ. A. H-04-3896, 2006 WL 213948, at * 4 (S.D. Tex. Jan. 25, 2006) (citing *Burzynski*, 989 F.2d at 742 (5th Cir. 1993)). Predicate acts for RICO violations are delineated in 18 U.S.C. § 1961(1), and include, for purposes of this case, mail fraud and wire fraud. "Any act that does not fall within the purview of RICO's definition of

predicate offenses is not a 'racketeering activity'" for the purposes of a RICO violation.  *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1001-02 (S.D. Tex. 1995).  When bringing claims under RICO based on the predicate acts of mail or wire fraud, the underlying predicate acts must be plead with particularity pursuant to FED. R. CIV. P. 9(b).  *See Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997).  When determining whether a fraud claim should be dismissed for lack of particularity, "the Rule 9(b) standards require a party to plead with specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and *an explanation as to why they are fraudulent*." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)) (emphasis added).

In Plaintiff's Amended Complaint, Pratt alleges the predicate acts of mail fraud, 18 U.S.C. § 1941, and wire fraud, 18 U.S.C. § 1343.  Dkt. No. 17 ¶¶65-68, 89-90.  Mail fraud consists of: (1) a scheme to defraud by means of false or fraudulent representation, (2) interstate or intrastate use of the mails to execute the scheme, (3) the use of the mail by the defendant connected with the scheme, and (4) actual injury to the plaintiff.  18 U.S.C. § 1941; *Burzynski*, 989 F.2d at 742.  The elements of a wire fraud claim under 18 U.S.C. § 1343 are similar to those for a mail fraud claim except the use of the wire must be interstate.  18 U.S.C. § 1943; *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988).  To invoke mail or wire fraud, a plaintiff must articulate some "false or fraudulent misrepresentation." *See In re MasterCard Intern. Inc.*, 313 F.3d 257, 263 (5th Cir. 2002) (citing *Burzynski*, 989 F.2d at 742).

The Defendants argue Pratt fails to allege the predicate acts of mail and wire fraud because Plaintiff simply does not identify a false or fraudulent misrepresentation attributable to the Defendants. The allegations of mail and wire fraud as found in Plaintiff's Amended Complaint are as follows:

> 65. On August 15, 2005, Ms. Turner resigned from her employment with Plaintiff, promptly joined [the Easley Insurance Agency], and began contacting Plaintiff's customers in violation of the confidentiality and noncompetition provision of the

Producer Agreement between Ms. Turner and Plaintiff.  During the next several weeks, Ms. Turner sent letters to customers of Plaintiff stating that "upon renewal, [Progressive Insurance Company] ("Progressive") will be transferring your auto policy to my new location . . ."  This statement is a deliberate misrepresentation of the fact that, unbeknownst to the customers, Ms. Turner had actually submitted Agent of Record letters to the insurer transferring the policy to "her new location" at Easley Insurance Agency.

66. Upon information and belief, between August 15, 2005 and September 8, 2005, Ms. Turner sent numerous letters through the U.S. Postal Service and/or changed Agent of Records for numerous customers of Plaintiff. . . .

67. Many of the [] customers were individuals whose insurance was written through Progressive.  Agent of Record forms obtained during Ms. Turner's employment with Plaintiff were submitted for the following customers . . . These Agent of Record forms were submitted via a website named ForAgentsOnly.com, a secure website for agents of Progressive located at http://www.foragentsonly.com.  This website was registered by Progressive, whose address is 6300 Wilson Mills Road, Mayfield Village, Ohio, 44143.  The internet provider location is Cleveland, Ohio.

68. In the letters to the customers, Ms. Turner omitted to explain that the insurance was being transferred because Ms. Turner had submitted fraudulent Agent of Record letters.  Upon information and belief, these letters were sent through the United States Postal Service.

Dkt. No. 17 ¶¶65-68.

Although Pratt contends Turner submitted "fraudulent" Agent of Record letters and "deliberately misled" its customers, Pratt fails to allege any facts indicating the Agent of Record forms or the statements made in Turner's letters were false and/or misleading.  In Pratt's recitation of the facts underlying its Amended Complaint, it concedes that, while employed at Pratt, Turner sent many Pratt customers Agent of Record forms.  *See* Dkt. No. 17 ¶40.  Pratt claims Turner sent these forms to Pratt customers with the instruction that they sign the document but leave the name of the new agent blank.  *Id.*  According to Plaintiff's Amended Complaint, this would allow Turner to move the customers to a new agency in the event she found herself no longer employed by Pratt.  *Id.*  It appears that by signing the Agent of Record forms and leaving the name of the new agent blank, the Pratt customers were aware

7

Turner could switch their insurance agent or agency at any time.  Notably, Pratt does not bring forth a single factual allegation supporting the conclusion that Turner obtained the Agent of Record forms in a fraudulent manner or by a false or fraudulent misrepresentation.  In other words, nothing in Plaintiff's Amended Complaint indicates Pratt's former customers were somehow fraudulently induced into signing the Agent of Record forms.  To the extent Plaintiff attempts to make such a claim, it either simply does not exist or Plaintiff has not plead such an allegation with the particularity required under FED. R. CIV. P. 9(b).

Pratt's mail fraud claims focus predominantly on Turner's letters to Pratt's clients regarding transferring their policies to her new location.  *See* Dkt. No. 17 ¶65.  In a somewhat confusing argument, Pratt claims that a fraud was committed because "[i]t was not the insurer or the insured submitting the Agent of Record letter, rather it was the Easley Defendants (through Turner)."  Dkt. No. 27 at p.6.  As the Court understands its argument, Pratt essentially claims that Turner, on behalf of the Easley Defendants, fraudulently misled Pratt's customers by informing them Progressive would be transferring their policies to the Easley Insurance Agency rather than relaying to the customers a statement the Court presumes Pratt would have preferred, that *Turner* would be submitting previously signed Agent of Record forms to transfer their policies to the Easley Insurance Agency.  The statement used by Turner, and complained of by Pratt, however, is neither fraudulent nor misleading.  To the contrary, it appears Turner's statement that Progressive "will be transferring your auto policy to my new location" is wholly accurate and not "deliberately vague" as Pratt seems to claim.  Dkt. No. 17 ¶65; Dkt. No. 27 at p.6.  The facts as provided by Pratt indicate Plaintiff's customers chose Turner as their insurance agent, and after she left Pratt's employment, she informed the customers their insurance carrier would honor their agent selection and transfer their policies accordingly.

Even construing the facts in Plaintiff's favor, the Court fails to see how Turner's statements or

Progressive's transferring of policies provide any support for Pratt's claim a defendant made a false or fraudulent misrepresentation via mail.  Although Turner's actions may constitute *some* business tort, her communications did not include a fraudulent misrepresentation, or at least one sufficiently plead in accordance with the particularity required by FED. R. CIV. P. 9(b), and thus do not lay a foundation for mail fraud.  As stated above, to properly put forward a claim of mail fraud, a plaintiff must bring forth at least an allegation of some false representation and must explain not only the who, what and when of the allegedly fraudulent communication, but also *why* such communication was fraudulent.  *See In re MasterCard Intern. Inc.*, 313 F.3d 257, 263 (5th Cir. 2002) (noting that a "particularly compelling" reason to dismiss a RICO claim is because the plaintiff does not "show that the Defendants made a false or fraudulent misrepresentation"); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (finding that portions of a RICO claim were not alleged because "[t]he complaint gives some specifics about communications through the mails or on the telephone, but generally fails to specify the content of any misrepresentation"); *Toms v. Pizzo*, 4 F. Supp. 2d 178, 184 (W.D.N.Y. 1998) (dismissing on a 12(b)(6) motion a RICO claim based on fraud because "there is no suggestion that any false statements were made in the communications"); *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (laying out the requirements for pleadings of fraud under Rule 9(b)).  Certainly, no company likes to see its customers taken away by a competitor, but that does not transform the communications between Turner and Pratt's former clients into mail fraud.  *See Toms*, 4 F. Supp. 2d at 184.

Pratt's claims of wire fraud are based on similar reasoning.  Pratt contends the Easley Defendants submitted "fraudulent" Agent of Record forms to Progressive Insurance Company via its agent-only website.  Dkt. No. 17 ¶¶67-68. As stated above, based on Plaintiff's own recitation of the facts, it appears the Pratt customers knowingly and willingly signed the Agent of Record forms and left the name of the agent blank.  It appears Pratt's customers were willing to allow Turner to switch them to a new

agency in the event she was no longer working at Pratt.  In other words, Pratt alleges no facts in support

of its contention the Agent of Record forms were fraudulent.  Therefore, the Court finds no wire fraud

has been alleged.  Because the Court finds Pratt failed to assert predicate acts to support its RICO action,

its RICO claim should be dismissed.

### 2. Failure to Allege Reliance

Assuming, *arguendo*, the Court were to find Pratt's allegations indicated fraud, the Defendants

contend Plaintiff's Amended Complaint still fails because it does not establish any reliance upon the

supposed misrepresentations.  Civil RICO claims "require[] a causal connection between the predicate

mail or wire fraud and a plaintiff's injury that includes 'but for' and 'proximate' causation."  *Summit*

*Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 558 (5th Cir. 2000).

Pratt argues the Fifth Circuit's decision in *Procter & Gamble Company v. Amway Corporation*,

242 F.3d 539 (5th Cir. 2001), relieves it of having to plead reliance in the RICO context when there is

a "fraud directed at the customers."  *See* Dkt. No. 27 at pp.5-6.  To be clear, Pratt does not claim the

Defendants overlooked or misconstrued some pleading of reliance in Plaintiff's Amended Complaint;

rather, Pratt claims that, pursuant to *Proctor & Gamble*, it does not have to plead reliance at all.  *Id.*

However, Pratt reads *Procter & Gamble* too broadly.  In *Procter & Gamble*, the Fifth Circuit considered

whether the district court correctly dismissed pursuant to Rule 12(b)(6) Procter & Gambles' civil RICO

claim against Amway for spreading false rumors Proctor & Gamble had significant links to Satanism.

*Procter & Gamble*, 242 F.3d at 564. The district court dismissed Procter & Gamble's RICO action

because it did not claim to have relied on any of the misrepresentations Amway allegedly made via mail

and wire.  *Id.*  In deciding the issue, the Fifth Circuit first observed "[i]n civil RICO claims in which

fraud is alleged as a predicate act, reliance on the fraud must be shown."  *Id.* (citing *Summit Props.*, 214

F.3d at 560-62).  The court then went on to recognize a narrow exception to the rule that a plaintiff must

plead its own reliance to support a RICO claim.  *Id.* at 564-65.  The court acknowledged when the underlying allegation is that a competitor lured a plaintiff's customers away by a fraud aimed at its customers, a plaintiff may not have to show *its own* reliance.  *Id.*  The court noted this exception, however, does not relieve a plaintiff from the requirement it allege *its customers* relied on some misrepresentation by the defendant.  *Id.*; *see also Sandwich Chef of Tex., Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 222 (5th Cir. 2003) (noting the Fifth Circuit's *Procter & Gamble* decision hinged on the fact the plaintiff's customers relied on the alleged misrepresentation).

Indeed, in finding reliance was appropriately averred, the *Procter & Gamble* court reasoned because the plaintiff's *customers relied* on the defendant's fraudulent statement, the crucial element of reliance—and thus causation—was sufficiently asserted.  *Id.  Procter & Gamble* thus merely stands for the proposition that even though a plaintiff need not itself rely on the alleged fraud, when a fraud is directed at a plaintiff's customers, the customers must do so.  *Id.*; *see also Summit Props.*, 214 F.3d at 560-62 (recognizing "a plaintiff [] may not need to show reliance when a competitor lured the plaintiff's customers away by fraud directed at the plaintiff's customers," while also observing some reliance requirement "is a commonsense liability limitation" when a party seeks RICO damages for injuries resulting from fraud).

Pratt has failed to allege or bring forth any factual allegations supporting the notion its customers relied on the supposed fraudulent misrepresentations discussed above.  The Defendants' motions to dismiss Pratt's RICO claims for failure to state a claim should therefore be granted.[3]  Accordingly, Pratt's RICO claims are dismissed.

---

[3] Because Pratt's RICO claims clearly fail to state a claim upon which relief can be granted on the grounds discussed above, Defendants' various attempts to establish other infirmities in Pratt's RICO action need not be addressed.

**B. Failure to State a Claim Under the CFAA**

The CFAA provides for criminal and civil prosecution of various fraudulent and damaging activities related to the use of computers.  *See Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir. 2006); 18 U.S.C. § 1030(a)(1)-(7).  A party may bring a civil suit for damages arising from violations of the CFAA pursuant to 18 U.S.C. § 1030(g).  *See Roehrs*, 470 F.3d at 1156-57.  To bring a civil action under 1030(g), a plaintiff must show a violation of one of the CFAA's substantive provisions, as set forth in section 1030(a), and allege the existence of at least one of the five numbered clauses of subsection 1030(a)(5)(B).  *Id.*

Section 1030(a)(4) authorizes civil suit of a defendant who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period."  18 U.S.C. § 1030(a)(4).  Section 1030(a)(5)(B)(i) punishes a defendant who causes "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value."  18 U.S.C. § 1030(a)(5)(B)(i).

Although Pratt does not specify the provisions of the CFAA upon which it relies, Plaintiff's CFAA claims appear to be brought pursuant to section 1030(a)(4).  *See* Dkt. No. 17 ¶¶97-98 (paraphrasing 18 U.S.C. § 1030(a)(4)).  Pratt claims "one or more [defendants] accessed one or more of Plaintiff's computers without authorization or exceeding any authorization granted and knowingly and with intent to defraud, thereby obtained information and/or things of value."  Dkt. No. 17 ¶97; 18 U.S.C. § 1030(a)(4).  Plaintiff also maintains the supposed violations resulted in a loss in excess of

$5,000.  Dkt. No. 17 ¶¶80, 98.

### 1. The Easley Defendants

The Easley Defendants do not directly challenge Pratt's claims under the CFAA.  In a footnote, the Easley Defendants merely contend Pratt's CFAA claims do not constitute a predicate offense for Plaintiff's RICO charges.  *See* Dkt. No. 25 at p.11 n.4.  It does not appear Pratt attempts to assert its CFAA claims as a predicate for its RICO allegations.  As discussed above, Plaintiff bases its RICO claims of the predicate offenses of mail and wire fraud.  The Court notes, however, if Pratt were to attempt to use its CFAA claims as a predicate for its RICO allegation, Plaintiff would fail.  Predicate acts for RICO violations are delineated in 18 U.S.C. § 1961(1), and, as noted above, "any act that does not fall within the purview of RICO's definition of predicate offenses" will not suffice as a predicate for RICO liability.  *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1001-02 (S.D. Tex. 1995).  CFAA violations are not provided for in section 1961(1)'s list of predicate offenses and thus are an inadequate basis on which to rest a RICO claim.  18 U.S.C. § 1961(1).

In the same footnote, Easley Defendants briefly maintain Pratt failed to satisfy the pleading requirements of FED. R. CIV. P. 9(b).  *Id.* (merely claiming Pratt's pleading "on its face, does not comply with Rule 9, and should be dismissed").  Easley Defendants provide no support for their argument Rule 9(b) applies to Pratt's CFAA allegations.  Other courts, however, have found causes of action asserted under 18 U.S.C. § 1030(a)(4) are sufficiently plead if a plaintiff alleges that a defendant "participated in dishonest methods to obtain the plaintiff's secret information."  *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126 (W.D. Wash. 2000); *see also P.C. of Yonkers, Inc. v. Celebrations! The Party & Seasonal Superstore, L.L.C.*, Civ. A. No. 04-4554(JAG), 2007 WL 708978, at *4 (D.N.J. Mar.5, 2007)  (observing that "[d]espite the fact that the CFAA contains the term 'fraud,' Rule 9(b)'s heightened pleading standard does not apply to claims made under the statute")

(collecting cases).

Pratt has sufficiently alleged its CFAA claims.  Plaintiff provides numerous factual allegations regarding the Easley Defendant's knowing and intentional access to and unauthorized use of Pratt's computers and electronic files.  *See, e.g.*, Dkt. No. 17 ¶36 (Pratt shared confidential financial and business information with the Easley Defendants); Dkt. No. 17 ¶51-53 (Doane copied thousands of Plaintiff's documents and transmitted proprietary information by email to her family members); Dkt. No. 17 ¶64 (the Easley Defendants took numerous files from Pratt's offices).  Pratt also alleges the Easley Defendants' conduct  furthered their fraudulent scheme and obtained information with a value of over $5,000.  Dkt. No. 17 ¶57 (the Easley Defendants utilized confidential information taken from Pratt's files in creating quotes for Plaintiff's customers); Dkt. No. 17 ¶69 (the Easley Defendants obtained a business advantage from their use of information stemming from access and unauthorized use of Pratt's computers and electronic files); Dkt. No. 17 ¶¶80, 98 (the alleged violations resulted in a loss to Pratt in excess of $5,000).  Thus, to the extent the Easley Defendants challenge Pratt's CFAA claims, the claims survive the Easley Defendants' motion to dismiss and the motion is hereby denied.

### 2. The Trinity Defendants

The Trinity Defendants seek dismissal of Pratt's CFAA claims on the basis they had no physical contact with Plaintiff's computers and only received Pratt's supposed proprietary information.  Essentially, the Trinity Defendants argue the mere receipt of information from a protected computer is not equivalent to obtaining "access" to that computer under the CFAA.

Pratt responds by arguing its claims against the Trinity Defendants under the CFAA are not limited to the Trinity Defendants' direct violation of the statute's provisions.  *See* Dkt. No. 28 at p.10.  Plaintiff contends its allegations the Trinity Defendants "aided and abetted" and/or "conspired with" the

Easley Defendants support its CFAA claims against the Trinity Defendants.[4]  *Id.*

To aid and abet in a civil context, a defendant must have knowledge of the primary actor's tortious conduct and substantially assist in bringing the conduct to fruition.  *Morin v. Trupin*, 711 F. Supp. 97, 112 (S.D.N.Y.1989) (identifying the elements of aiding and abetting as (1) existence of some primary tortious conduct, (2) the aider and abettor having knowledge of that tortious conduct, and (3) the aider and abettor providing substantial assistance to achieve the tortious conduct).  Having already alleged a primary tort of a CFAA violation against the Easley Defendants, Pratt further claims the Trinity Defendants knew the Easley Defendants wrongfully accessed Plaintiff's customer information, provided assistance and encouragement to the Easley Defendants in their unlawful acquisition of the information and ultimately used the information to write policies for the Easley Defendants and its customers.  *See, e.g.*, Dkt. No. 17 ¶¶17, 24-28 (the Trinity Defendants aided and abetted the Easley Defendants and, together, were members of a conspiracy against Plaintiff); Dkt. No. 17 ¶¶42, 45 (the Trinity Defendants were aware Doane was a former Pratt employee); Dkt. No. 17 ¶49 (the Trinity Defendants were active participants in the alleged theft and misuse of Plaintiff's information); Dkt. No. 17 ¶¶58-61 (the Trinity Defendants used the information to write insurance policies).  Pratt's Amended

---

[4] Plaintiff's Amended Complaint does not with perfect clarity allege its aiding and abetting and conspiracy theories as they concern its CFAA claims.  *See* Dkt. No. 17 ¶¶96-99.  Plaintiff brings general allegations of aiding and abetting and conspiracy in paragraphs 15 through 28.  *See, e.g.*,  Dkt. No. 17 ¶17 (the Trinity Defendants "aided and abetted Doane in her misappropriation and subsequent use of Plaintiff's proprietary information and trade secrets, providing assistance and encouragement.").  Plaintiff's Count Two regarding its CFAA claims does not explicitly assert its aiding and abetting or conspiracy charges and only reincorporates the factual allegations contained in paragraphs 29 through 82.  *See* Dkt. No. 17 ¶¶96-99.  However, Pratt's earlier allegations of aiding and abetting and conspiracy and its Response to the Trinity Defendants' Amended Motion to Dismiss (Dkt. No. 28) make clear its allegations of agency, aiding and abetting, ratification, vicarious liability and conspiracy are meant to apply to Plaintiff's counts as later alleged. *See* Dkt. No. 28 at p.10; *see also Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); *Massingill v. Nicholson*, 496 F.3d 382, 386 (5th Cir. 2007) (observing that courts review complaints "with an eye towards our liberal notice pleading standard").

As Courts often note, the function of a complaint under the Federal Rules is merely to give a defendant fair notice of a plaintiff's claim and the grounds upon which a plaintiff relies.  *See, e.g.*, *Doss v. South Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987) (citing *Conley*, 355 U.S. at 47).  Here, the Court finds Plaintiff's Amended Complaint provided the Trinity Defendants with fair notice Pratt contends they are liable under aiding and abetting and/or conspiracy theories as to each count Pratt brings.

15

Complaint thus properly asserts a claim for aiding and abetting the Easley Defendants' purported violation of the CFAA.

To establish a claim for civil conspiracy, a Plaintiff must show that (1) two or more persons; (2) have an objective to be accomplished; (3) came to a meeting of the minds on the objective or course of action; (4) committed one or more unlawful, overt acts; and (5) damages ensued as a result. *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 124 (5th Cir. 1993).   Although Pratt's Amended Complaint is not a model of clarity, it is reasonable to infer based on the allegations cited above the Trinity Defendants and Easley Defendants had a "meeting of the minds" as to the Easley Defendants' actions. *See* Dkt. No. 17 ¶¶17, 24-28, 42, 45, 49 & 58-61.   Accepting as true all Plaintiff's assertions of fact and drawing all reasonable inferences from the facts in Pratt's favor—as the Court must do—Plaintiff asserts sufficient factual allegations to establish a claim for civil conspiracy. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *see also id.*

Thus, Pratt has set forth facts sufficient to support its theories the Trinity Defendants aided and abetted and/or conspired with the Easley Defendants to violate the CFAA.[5]   The Trinity Defendants' motion to dismiss Plaintiff's CFAA claim is accordingly denied.

## C. Failure to State a Misappropriation of Trade Secrets Claim

### 1. The Easley Defendants

Like the Easley Defendants' arguments regarding Pratt's CFAA claims, the Easley Defendants appear to contend Pratt's misappropriation of trade secrets claims do not satisfy the heightened pleading

---

[5] The Trinity Defendants devote the final section of their Motion to Dismiss (Dkt. No. 24) to the contention they are not vicariously liable for the alleged acts of Easley Defendants.   Dkt. No. 24 at p.25-26.   Trinity Defendants' arguments in this section, however, are limited to the claim the Easley Defendants were not acting as agents of the Trinity Defendants.   Because they fail to address Pratt's claims the Trinity Defendants aided and abetted and/or conspired with the Easley Defendants to commit tortious acts against Pratt, the Court need not address the issue of agency.

requirements of FED. R. CIV. P. 9(b).  *See* Dkt. No. 25 at p.11 ("Even the allegation of theft of trade secrets does not disclose precisely what Plaintiff alleges that the Easley Defendants converted, and when, and how it was used to harm Plaintiff, and what damage Plaintiff allegedly suffered").  Theft of trade secrets claims, however, need not comply with the pleading requirements provided by Rule 9(b).  *See* FED. R. CIV P. 9(b).

"To state a claim for trade secret misappropriation under Texas law, a plaintiff must (1) establish that a trade secret existed; (2) demonstrate that the trade secret was acquired by the defendant through a breach of a confidential relationship or discovered by improper means; and (3) show that the defendant used the trade secret without authorization from the plaintiff."  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149-50 (5th Cir. 2004).  With the elements of a claim for trade secret misappropriation in mind, Pratt easily satisfies its pleading requirements regarding its theft of trade secrets claim against the Easley Defendants.  At numerous times in its Amended Complaint, Plaintiff claims the Easley Defendants wrongfully and without authorization copied documents containing proprietary, confidential information and used that information when competing for Pratt's customers.  *See, e.g.*, Dkt. No. 17 ¶36 (Pratt shared confidential financial and business information with Easley Defendants); Dkt. No. 17 ¶¶51-54 (the Easley Defendants, without permission, copied and removed from Pratt's offices over 3,500 pages of Plaintiff's documents in preparation to begin a competing insurance agency); Dkt. No. 17 ¶57 (the Easley Defendants used the information contained in the copied documents to contact Pratt's customers in an effort to persuade them to switch insurance agencies).  The Court finds Plaintiff sufficiently alleged its theft of trade secrets claim as to the Easley Defendants.  Thus, to the extent the Easley Defendants challenge Pratt's pleading of its misappropriation of trade secrets claim, their motion to dismiss is denied.

### 2. The Trinity Defendants

The Trinity Defendants again argue Pratt has failed to allege sufficient facts to establish they Trinity Defendants themselves misappropriated Plaintiff's trade secrets. However, as with Pratt's CFAA claim, Plaintiff does not rest its misappropriation allegations on the Trinity Defendants' direct theft of trade secrets. Rather, Pratt contends the Trinity Defendants aided and abetted and/or conspired with the Easley Defendants to carry out the tortious conduct. The Court need not repeat the elements of civil aiding and abetting and conspiracy or regurgitate the facts set forth in Pratt's allegation to find Pratt sufficiently alleged the Trinity Defendants aided and abetted and/or conspired with the Easley Defendants to misappropriate Plaintiff's trade secrets. *See* Dkt. No. 17 ¶¶17, 24-28, 42, 45, 49 & 58-61 (alleging the Trinity Defendants aided and abetted and conspired with the Easley Defendants to carry out tortious conduct again Pratt). The Trinity Defendants' motion to dismiss Plaintiff's misappropriation of trade secrets claim is hereby denied.

### D. Failure to State a Claim Under the TTLA

Pratt maintains Defendants violated the TTLA, TEX. CIV. PRAC. & REM. CODE § 134.001, by unlawfully appropriating Plaintiff's property as described in the Texas Penal Code § 31.03. *See* Dkt. No. 17 ¶110. Texas Penal Code § 31.03 provides that an individual commits theft "if he unlawfully appropriates property with *intent to deprive* the owner of property." TEX. PEN. CODE § 31.03(a) (emphasis added).

The Defendants suggest Pratt failed to assert a claim upon which relief can be granted because, under the facts alleged, Pratt was never deprived of its property. Defendants specifically contend they cannot be liable for having unlawfully appropriated Plaintiff's business and financial documents because Pratt merely alleges they copied, or aided and abetted and/or conspired to copy, Plaintiff's records and thus did not "deprive" Plaintiff of any of its property within the meaning of the Texas Penal Code's

section 31.01(2).

Texas Penal Code section 31.01(2) defines "deprive" as follows:

(A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner;

(B) to restore property only upon payment of reward or other compensation; or

(C) to dispose of property in a manner that makes recovery of the property by the owner unlikely.

TEX. PEN. CODE § 31.01(2).

At least one Texas court has dealt with an issue nearly identical to that which the Defendants raise. In *Falcone v. State*, 682 S.W.2d 418 (Tex. App.—Houston [1st] 1984, no pet.), the court, in reviewing a criminal conviction, considered whether the taking of copies of another's documents containing trade secrets amounted to an offense under section 31.03(a). 682 S.W. 2d at 420. In that case, a criminal defendant copied numerous documents belonging to his employer, took the copies with him as he left the company's employment and used the information provided within to compete with his former employer. *Id.* at 419-20. Analyzing the term "deprive" as defined in section 31.01, the *Falcone* court reasoned because the criminal defendant did not intend to (1) withhold the *original documents*, (2) hold the *original documents* for ransom or (3) dispose of the *original documents* in a way that made their recovery unlikely, the defendant could not be found guilty under the Texas Penal Code's section 31.03(a). *Id.* at 420. The *Falcone* court hinged this portion of its opinion on the fact the defendant only took possession of *copies* of his employer's documents. *Id.* ("the prints possessed by the [defendant] were not his [employer's] original drawings, *but were merely copies* . . . [the employer] still had every original drawing in his master file") (emphasis added). Thus, by definition, the defendant did not "deprive" his employer of any property as defined by section 31.01(2), because the employer's

19

property—the original documents—had never been taken. *Id.* The *Falcone* court went on to find the defendant was improperly convicted under Texas' general theft statute and should have been charged under the theft of trade secrets provision of the Texas Penal Code, TEX. PEN. CODE § 31.05. *Id.* at 421.

Like the *Falcone* court, this Court finds no allegations the Defendants permanently withheld, held for ransom or unlawfully disposed of Pratt's documents. The Defendants simply did not "deprive" Plaintiff of its property within the meaning of section 31.03(a) and 31.01(2). In other words, the taking of copies of Pratt's files does not implicate the Penal Code's section 31.03(a) as a matter of law. *Falcone*, 682 S.W. 2d at 420; *see also Mohammed v. State*, No. 05-98-00945-CR, 2001 WL 710436, at *3 (Tex. App.—Dallas June 26, 2001, no pet.) (recognizing trade secrets are not property that can be deprived under section 31.03(a)). Accordingly, no relief can be granted under the TTLA for a violation of § 31.03(a) of the Texas Penal Code.

The Defendants' actions may have constituted an offense under the Texas theft of trade secrets statute, TEX. PEN. CODE §§ 31.05(b)(2)-(3). Indeed, in Plaintiff's Original Complaint, it brought its TTLA claim through the Defendants' supposed violation of section 31.05. *See* Dkt. No. 1 ¶84. However, in response to the Easley Defendants' first Motion to Dismiss (Dkt. No. 11), Pratt apparently conceded the information contained within its copied documents does not fall within the definition of a "trade secret" under the Texas theft of trade secrets law. *See* Dkt. No. 18 at p.12 ("the Easley Defendants have correctly objected that Plaintiff's proprietary information does not fall within the definition of 'trade secrets' under [section 31.05]"). It may be the case the Defendants' actions simply do not constitute a criminal offense for theft—of trade secrets or otherwise—as defined in the Texas Penal Code. However, this question is not before the Court. The Court need only determine whether Pratt's claims are cognizable under Texas Penal Code's section 31.03(a). Answering this question in the negative, the Defendants' motions to dismiss on the grounds Plaintiff failed to state a claim under

the TTLA are granted.  Pratt's claims under the TTLA shall be dismissed.[6]

**E. Failure to State a Claim for Breach of Fiduciary Duty**

**1. The Easley Defendants**

The Easley Defendants next contend Plaintiff failed to state a claim for breach of fiduciary duty. To establish a breach of fiduciary duty claim, a plaintiff must show: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach caused an injury to the plaintiff or benefit to the defendant.  *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 743 (Tex. App.—Dallas 2007, no pet.).  The Easley Defendants provide little in support of their contention Plaintiff's breach of fiduciary duty claim should be dismissed.  Without citation to any authority, the Easley Defendants merely maintain Pratt's Amended Complaint "woefully fails to describe any specific 'proprietary information'" and "does not allege how such information was used to damage Plaintiff, or describe in any way specific damages from any such breach."  Dkt. No. 25 at p.12.

As an initial matter, no party disputes the existence of a fiduciary relationship between the Easley Defendants and Pratt.  Pratt's Amended Complaint, moreover, goes into more than sufficient detail in describing the fiduciary relationship between the Easley Defendants and Pratt, the information taken in breach of such fiduciary relationship, how such information was used and the damages resulting from the alleged fiduciary breach.  *See, e.g.*, Dkt. No. 17 ¶¶36, 48, 51-53, 57-61, 65-69, 80 & 118-121 (describing at length the relationship between Pratt and Easley Defendants, the information contained in the copied documents and how the information was purportedly taken and used to harm Plaintiff).

---

[6] The Easley Defendants seem to presume their alleged TTLA violations could give rise to RICO liability.  *See* Dkt. No. 25 at p.5-6.  Violations of Texas Penal Code section 31.03, however, are not predicate acts as identified in RICO's section 1961(1).  *See* 18 U.S.C. § 1961(1); *see also Pan American Maritime Inc. v. Esco Marine Inc.*, No. C.A. B-04-188, 2005 WL 1155149, at *5 (S.D. Tex. May 10, 2005) (observing "Courts have consistently held that 'acts that constitute theft under state law are not predicate acts for racketeering activity'") (collecting cases).  Thus, even if the Court were to allow Pratt's claims under the TTLA to proceed, they would not serve as a basis for the Defendants' RICO liability.

The Easley Defendants' motion to dismiss on the basis Plaintiff fails to state a claim for breach of fiduciary duty is hereby denied.

### 2. The Trinity Defendants

The Trinity Defendants also argue Pratt failed to state a claim for breach of fiduciary duty. The parties agree a "third party [who] knowingly participates in the breach of fiduciary duty" may be liable as a joint tortfeasor with the fiduciary. *Baty v. Protech Ins. Agency*, 63 S.W.3d 841, 863 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The Trinity Defendants maintain Pratt failed to assert sufficient factual allegations to support its claim.

As the Court discussed in the context of Pratt's allegations of aiding and abetting and conspiracy liability, Pratt sufficiently alleged facts supporting the conclusion the Trinity Defendants knew of and were actively involved in the Easley Defendants' actions. *See* Dkt. No. 17 ¶¶17, 24-28, 42, 45, 49 & 58-61 (providing factual allegations the Trinity Defendants were third parties who knowingly participated in the Easley Defendants' tortious conduct against Pratt). The Court has little trouble allowing Pratt's claims for breach of fiduciary duty to go forward. The Trinity Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim is thus denied.

## F. Failure to State a Breach of Contract Claim

The Easley Defendants also contest Pratt's claims Turner breached a contract with Plaintiff. To bring a breach of contract action, a plaintiff must establish the following elements: (1) a valid enforceable contract existed; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the defendant's breach was the cause of plaintiff's injury. *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.—Corpus Christi 2006, pet. dism'd). The Easley Defendants' arguments in support of its motion to dismiss Pratt's breach of contract claim against Turner mirror their contentions aimed at Plaintiff's breach of fiduciary duty claim. Specifically, the Easley Defendants argue "the Amended Complaint does not in any way describe what was allegedly

taken, nor show how it was used, or how Plaintiff has been damaged." Dkt. No. 25 at p.12. The Easley Defendants do not contest a contract was in place between Turner and Pratt, Plaintiff performed, the contract was breached or Turner's actions caused Plaintiff harm.

However, independently, the Court again finds Pratt's allegations sufficient. Turner was allegedly bound by confidentiality and noncompetition provisions of a Producer Agreement between herself and Plaintiff. Dkt. No. 17 ¶65. Pratt claims Turner breached the agreement by contacting numerous customers after leaving Plaintiff's employment. Dkt. No. 17 ¶¶65-78. Finally, Pratt alleges Turner's breach caused it harm. Dkt. No. 17 ¶¶80-82. The Easley Defendants' motion to dismiss Plaintiff's breach of contract claim against Turner is hereby denied.

## G. Failure to State a Claim for Tortious Interference with Contract and Prospective Contract

### 1. The Easley Defendants

The Easley Defendants do not directly contest Plaintiff's claims they tortiously interfered with Pratt's contracts and/or prospective contracts. However, for the sake of completeness and to lay a foundation for the Trinity Defendants' motion to dismiss Plaintiff's claims of tortious interference with contract, the Court will address the issues.

The elements a plaintiff must establish to claim tortious interference with contract are: (1) a contract subject to interference exists; (2) the alleged act of interference was willful and intentional; (3) the willful and intentional act proximately caused damage; and (4) actual damage or loss occurred. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Pratt alleges numerous contracts between itself and its clients existed subject to interference. Dkt. No. 17 ¶¶57, 59-61, 65-67 & 80. Plaintiff also claims the Easley Defendants willfully and intentionally interfered with such contracts by wrongfully acquiring and using confidential business and financial information. Dkt. No. 17 ¶¶51-54, 57 & 65-78. Plaintiff finally claims the Easley Defendants' actions caused harm to Pratt in the form of lost customers and thus profits. Dkt. No. 17 ¶¶61, 80-82. Therefore, Pratt fully alleged a claim for

tortious interference with contract.

The elements required to claim tortious interference with prospective contract are: (1) a reasonable probability the parties would have entered into a contractual relationship; (2) an "independently tortious or unlawful" act by the defendant preventing the relationship from occurring; (3) the defendant performed such act with a conscious desire to prevent the relationship from occurring, or it knew the interference was certain or substantially certain to occur as a result of the defendant's conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 413 (Tex. App.—Waco 2001, pet. denied).  The allegations cited above equally serve to substantiate a claim for tortious interference with prospective contract as Pratt alleges a reasonable probability exists it would have renewed the contracts with its customers leading to a continual stream of revenue that has since been interrupted by the Easley Defendants' alleged misconduct.  Dkt. No. 17 ¶¶79-80, 129.  Plaintiff therefore sufficiently alleged a claim for tortious interference with prospective contract.

## 2. The Trinity Defendants

Having established Pratt asserted claims against the Easley Defendants for tortious interference with contract and prospective contract, the Trinity Defendants argue Plaintiff's claims against them should again be dismissed because Pratt failed to allege facts sufficient to establish the Trinity Defendants can be held liable for the underlying torts.  Pratt, however, again replies the Trinity Defendants may be held liable on a theory the Defendants conspired to commit the underlying tort.  As mentioned numerous times above, it is reasonable to infer from Plaintiff's Amended Complaint the Trinity Defendants and the Easley Defendants had a "meeting of the minds" as to the Easley Defendants' tortious actions. *See* Dkt. No. 17 ¶¶15-28, 42, 45, 49 & 58-61.  Thus, Pratt alleged a claim upon which relief can be granted: namely, that the Trinity Defendants conspired with the Easley

Defendants to tortiously interfere with contract and prospective contract. The Trinity Defendants' motion to dismiss Plaintiff's claim for tortious interference with contract and prospective contract is therefore denied.

**CONCLUSION**

The Court finds as follows:

1.   Defendants' motions to dismiss as to Plaintiff's RICO claims are GRANTED.

2.   Defendants' motions to dismiss as to Plaintiff's CFAA claims are DENIED.

3.   Defendants' motions to dismiss as to Plaintiff's misappropriation of trade secrets claims are DENIED.

4.   Defendants' motions to dismiss as to Plaintiff's claims under the TTLA are GRANTED.

5.   Defendants' motions to dismiss as to Plaintiff's breach of fiduciary duty claims are DENIED.

6.   Easley Defendants' motion to dismiss as to Plaintiff's breach of contract claim against Turner is DENIED.

7.   Defendants' motions to dismiss as to Plaintiff's claims for tortious interference with contract and tortious interference with prospective contract are DENIED.

It is so ORDERED.

Signed this 20th day of March, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE