# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| **JOE N. PRATT INSURANCE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-07-07** |
| | § | |
| **DONNA EASLEY DOANE, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court are Defendants Donna Easley Doane d/b/a Easley Insurance Agency, Judy Turner, Donald Easley, and Margaret Easley's (collectively, "Easley Defendants") Motion and Memorandum to Exclude Testimony and Other Evidence from Plaintiff's Expert Witness on Damages (Dkt. No. 63) and Motion and Memorandum to Exclude Testimony and Other Evidence from Plaintiff's Expert Witness, Roy L. Phillips (Dkt. No. 64). Having considered the motions, responses, replies, record, and relevant law, the Court finds that Dkt. No. 63 should be DENIED and Dkt. No. 64 should be GRANTED IN PART AND DENIED IN PART.

### Expert Testimony Standard

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the

case.

This "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  The expert testimony must be relevant, not simply in the sense that all testimony must be relevant under Federal Rule of Evidence 402, but also in the sense that the expert's proposed opinion is based on a valid scientific inquiry.  *Daubert*, 509 U.S. at 592.

The Supreme Court has provided five nonexclusive factors to consider when assessing whether the methodology upon which an expert rests his opinion is scientifically reliable.  These factors are (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community.  *Daubert*, 509 U.S. at 593-94; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).  The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue.  *Kumho Tire*, 526 U.S. at 150-51.  The party seeking to have the district court admit expert testimony must demonstrate by a preponderance of the evidence that the expert's findings and conclusions are reliable, but need not show that the expert's findings and conclusions are correct.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

## Discussion

### I.     Thomas M. Braniff

The Easley Defendants object to Mr. Braniff's testimony on the grounds that 1) it is not

relevant, as it does not address the cause of any "loss" suffered by Pratt and 2) even if the testimony is relevant, it is not reliable.  With respect to the relevancy objection, the Easley Defendants criticize Mr. Braniff's report because, they claim, it cannot explain how damages are "in any way connected to the copying of the allegedly 'secret' documents or any other conduct of the Defendants."  (Dkt. No. 63 at 6).  This is because Mr. Braniff only valued Doane's and Turner's books of business at Pratt as of December 31, 2004, before Doane and Turner resigned—Mr. Braniff's report did not compare the December 31, 2004, values to some later post-resignation date.[1]  Accordingly, the Easley Defendants claim that Mr. Braniff's report cannot show that the allegedly tortious conduct "caused" the lost profits.[2]  Pratt, however, correctly notes that lost profits are not the only measure of damages.  Another appropriate damage model is the "market value," where the trier of fact can measure damages based upon what a reasonably prudent investor would have paid for the trade secret.  *Precision Plating & Metal Finishing Inc. v. Martin-Marietta Corp.*, 435 F.2d 1262, 1263-64 (5th Cir. 1970).

The Easley Defendants concede that if the "market value" damage theory is used, their objections regarding causation as they relate to relevancy are no longer warranted.  However, the Easley Defendants assert that Pratt should be foreclosed from proceeding with any damage theory other than "past and future lost profits."  According to the Easley Defendants, this is because they

---

[1]Doane resigned from Pratt at the end of February 2005, and Turner resigned on August 15, 2005.  (Dkt. No. 17 at ¶¶ 55 & 65).

[2]Pratt's First Amended Complaint identifies its actual damages as including past and future lost profits.  (Dkt. No. 17 at ¶ 135).  At the beginning of discovery, the Easley Defendants, in an interrogatory, asked Pratt to elaborate on all of the damages it was demanding, including how it calculated the dollar amount.  (Dkt. No. 111, Ex. 1).  Pratt responded on May 30, 2008, that "[d]iscovery is in its infancy and the damages suffered by Plaintiffs are still being determined.  At this time, however, Plaintiff's past lost profits are projected to be at least $450,000 (calculated by use of the documents attached as Exhibit 'A'—total lost commissions multiplied by 20% profit).  Plaintiff will supplement this response with regard to the other areas of damages, but estimates that the total damages sought will be in excess of $1 million."  (*Id.*).  Pratt elaborated on its calculation of lost profits in a supplemental response on July 1, 2008.  (Dkt. No. 111, Ex. 2).

relied on Pratt's assertions that it would only proceed on a "lost profits" theory of recovery and did not conduct discovery or secure an expert on the "market value" theory.

Under Federal Rule of Civil Procedure 37(c)(1), a party who fails to provide information required to be disclosed under Rule 26(a), which includes expert reports, is not allowed to use that information at a trial, unless the failure is substantially justified or is harmless. A district court's decision to admit or exclude evidence under these rules is reviewed for abuse of discretion. *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 280 (5th Cir. 2009). When reviewing a district court's decision, the reviewing court considers: 1) the explanation for the failure to disclose the evidence; 2) the importance of the evidence; 3) the potential prejudice to the opposing party in allowing the evidence; and 4) the availability of a continuance. *Id.*

The Court is not convinced that Pratt failed to comply with Rules 37 and 26. Pratt supplemented its response regarding damages when it submitted to the Easley Defendants its designation of Mr. Braniff and provided his report, which fully apprised the Easley Defendants of both the amount of economic damages being sought and the method of calculation of those damages.[3] This designation and report was submitted to Pratt on March 6, 2009, more than seven weeks before the Easley Defendants were required to designate experts.[4]

Even if Pratt did not comply with Rules 37 and 26, the Court finds that the oversight was substantially justified and harmless. Pratt's Response states that it believed it did provide adequate

---

[3]Pratt's Designation of Expert Witnesses described Mr. Braniff as an expert in the valuation of agencies and/or "books of business" and noted that he has testified in cases involving the valuation of insurance agencies and/or "books of business." (Dkt. No. 112, Ex. A). Moreover, Mr. Braniff's report states that it evaluates "the fair market value of the books of business." (Dkt. No. 112, Ex. B).

[4]The Parties, by agreement, extended the deadlines for designation of experts. Mr. Braniff's report was served on the Easley Defendants on March 6, 2009, and the Easley Defendants had until April 27, 2009, to designate their experts. (Dkt. No. 112 at 4-5).

notice to the Easley Defendants of its damage theory and supplement any previous inconsistent answers to interrogatories.  (Dkt. No. 112 at 2-4).   Mr. Braniff's testimony and report relating to the market value theory of damages is important to Pratt's case.  It appears to the Court that Pratt has secured an expert and conducted discovery with the intention of offering, primarily, the "market value" damage model at trial.  Moreover, the Court finds that no prejudice will result to the Easley Defendants by allowing Mr. Braniff's report and testimony relating to the market value theory.  The Easley Defendants received Mr. Braniff's report more than seven weeks before they had to designate their own expert witnesses, and a cursory reading of that report should have apprised the Easley Defendants that Pratt intended to move forward on the market value theory.  Last, while discovery in this case is complete, a trial date has not been set.  While the Court sees no reason for discovery to be reopened, litigation has not proceeded so far that a continuance, if necessary, would be unavailable.

Accordingly, with respect to Mr. Braniff's testimony and report, the Easley Defendants' relevancy objections are overruled.[5]

---

[5]The objections raised in the Easley Defendants' Sur-Sur-Reply in Support of Their Motion to Exclude Testimony and Other Evidence from Plaintiff's Expert Witness, Thomas M. Braniff, (Dkt. No. 114), are OVERRULED. The Easley Defendants claim that, because Doane had access to two insurance markets other than Trinity, she could have sold insurance through those other two companies—Progressive and Safeco—or secured other carriers.  The Court finds that Mr. Braniff's opinions are reliable, as about ninety-five percent of the business Doane wrote in 2005 was with Trinity.  Moreover, the other insurance markets available to Doane were not as "aggressive" in commercial policies, and the evidence shows that Doane's book of business—at least while working at Pratt—was seventy percent commercial. (Dkt. No. 115 at 2, Ex. A; Dkt. No. 117, Ex. A).   Additionally, Braniff's testimony that it would have taken Doane years to legally gather the information needed to write the large volume of insurance she wrote immediately after her departure from Pratt makes Braniff's assumption reliable—that the effect of Doane's alleged breaches of her fiduciary duties was that most of the business lost by Pratt was related to Doane's alleged wrongdoing.  Accordingly, even if Doane had other viable markets, she would not have had the necessary information to write the volume of insurance that she wrote, if it is found that she acted unlawfully.

The Easley Defendants also claim that Pratt cannot argue that "the availability of Trinity's products through Easley Insurance was the result of Ms. Doane's tortuous conduct," as the Court has dismissed the conspiracy claims against Trinity because, among other reasons, "Trinity had the legal right to appoint Easley Insurance and not Pratt Insurance." (Dkt. No. 114 at 3).  However, the fact that the Trinity Defendants cannot be liable for aiding or conspiring in Doane's alleged breach of fiduciary duty does not absolve Doane from liability for her actions.

The Easley Defendants' reliability objections are likewise without merit.  The Easley Defendants assert that Mr. Braniff's testimony and report do not give an accurate sense of how many customers would have left Pratt due to legitimate competition.  They also claim that Mr. Braniff did not take sufficient account of normal attrition rates for customers and the number of customers that actually stayed with Pratt when developing equity risk and risk premium percentages.[6]

The Court finds that Mr. Braniff's opinions are based on sound reasoning and sound assumptions.  Mr. Braniff has many years of experience in the insurance agency business and in performing valuations of insurance agencies and "books of business."  (Dkt. No. 108, Ex. A).  Mr. Braniff based his reasoning on the principles set forth in Internal Revenue Service Rev. Rul. 59-60, 1959-1 C.B. 237, and in accordance with the provisions set forth in The Guidelines for Appraisal Methods, a treatise written by the American Association of Insurance Management Consultants that details the appropriate methods for valuing insurance agencies and/or "books of business."  (Dkt. No. 112, Ex. C at 153-55, 189, 238-241).  The Court further finds that there is evidence that Mr. Braniff did take account of the factors—in a reliable manner—the Easley Defendants complain about.  The concerns and arguments raised in the Easley Defendants' motion can be fully explored and addressed on cross-examination, as their concerns go to the weight that should be afforded to the testimony, rather than to admissibility.

Accordingly, The Easley Defendants' Motion and Memorandum to Exclude Testimony and Other Evidence from Plaintiff's Expert Witness on Damages (Dkt. No. 63) is DENIED.

---

[6]The equity risk and risk premium percentages are used to calculate the discount rate and capitalization rate—rates that Mr. Braniff used to discount earnings.

II.      **Roy L. Phillips**[7]

The Easley Defendants also object to certain statements that appear in Roy L. Phillips' Rule 26(a)(2)(B) report as unhelpful to the jury and/or irrelevant.

1.      ". . . Easley [Donna Easley Doane] accepted the fact that ownership of . . . customers' information belonged to Pratt."

The Easley Defendants claim that this opinion "proposes to testify about Ms. Doane's subjective belief about ownership of the documents." (Dkt. No. 64 at 4). They claim that this testimony will be unhelpful to the jury in determining what Doane believed, especially in light of the fact that Doane has testified that she believed she had the right to copy the information. They assert that it is "hard to see how Mr. Phillips's testimony would improve on an effective cross-examination of Ms. Doane in helping the jury reach a decision about whether Ms. Doane really did 'believe that [she] had the right to copy that information and take it with [her].'" (Dkt. No. 64 at 5). However, the Easley Defendants are not reading the entirety of Mr. Phillips' opinion. The section of the report at issue reads as follows:

> When Easley was employed [by] the Plaintiff's insurance agency, she received a license issued by the Department of Insurance showing her as a "solicitor" of the Pratt Insurance Agency. At no time during her tenure there was she qualified to hold an appointment of an insurance company, and was therefore producing business in the name of, and for, the Pratt Insurance Agency contracts with insurance companies. This, in my opinion[,] shows that she was relying on the Pratt Agency to provide the markets, staff and other resources in the placement of insurance customers. This was a clear sign that Easley accepted the fact that the ownership of such customers' information belonged to Pratt. Without such support, she would not have been able to place any customer with an insurance company.

(Dkt. No. 64, Ex. 1).

_____

[7]To the extent Pratt argues that the Court has already found that the documents copied by the Easley Defendants did constitute Plaintiff's trade secrets, that is incorrect. The Court simply held, in its September 25, 2009, Memorandum Opinion & Order (Dkt. No. 96), that enough evidence exists for a jury to find that the documents could constitute trade secrets. (Dkt. No. 96 at 13, 16).

The Court finds that this statement, in its entirety, will be helpful to the jury.  Mr. Phillips'

opinion explains how the insurance business works and what Ms. Doane, or someone in her position,

would likely think about customer information given her status as a "solicitor."  Accordingly, the

Easley Defendants' objection to opinion number one is OVERRULED.

2.    ". . . Easley [Donna Easley Doane] misappropriated the expirations of her former
employer Pratt, and sought to transfer that property to her newly established
insurance agency for her own financial benefit."

The Easley Defendants object to this opinion on two grounds. First, they argue, Mr. Phillips'

opinion is irrelevant as far as it attempts to state that Doane "misappropriated" information and

imply that the documents she copied were protected trade secrets without considering or

commenting on the factors that determine whether documents are, legally, trade secrets.[8]  Second,

the Easley Defendants assert that even if the opinion was relevant, it is unhelpful to the jury because

the facts that bear on the protected status of the documents involve facts that are easily within the

ken of the average layperson.  Pratt, however, offers evidence that Mr. Phillips did consider the

"trade secret" factors discussed in footnote eight.  (Dkt. No. 116 at 2-3, Ex. A).  The Court

OVERRULES the Easley Defendants relevancy objection, as the Court finds that Mr. Phillips did

consider the factors that determine whether the documents are, legally, trade secrets.

However, to the extent Mr. Phillps' report attempts to comment on the trade-secret status of

the documents with legal conclusions and phrases, such as "misappropriate" and "proprietary

---

[8]A full discussion of what constitutes a trade secret can be found in the Court's September 25, 2009, Memorandum Opinion & Order (Dkt. No. 96 at 9-19). When determining whether a trade secret exists, courts are to apply the Third Restatement of Tort's six "relevant but nonexclusive" criteria: "(1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Lee*, 379 F.3d at 150 (citing *In re Bass*, 113 S.W.3d at 739-40) (incorporating the test set forth by Restatement (Third) of Unfair Competition § 39 reporter's n. cmt. d); *see also Carbo Ceramic, Inc. v. Keefe*, 166 Fed. App'x 714, 718 n.1 (5th Cir. 2006).

information," the Easley Defendants' second objection to opinion number two is SUSTAINED. This Court, like other courts, finds that expert legal conclusions about whether information consists of "trade secrets" are unhelpful to the fact finder. *See, e.g.*, *Cargill, Inc. v. Sears Petroleum & Transportation Co.*, 334 F. Supp. 2d 197, 250 (N.D.N.Y. 2004) (excluding proposed expert testimony that certain information qualifies as a trade secret, as the jury can draw its own conclusions); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 259 (W.D.N.Y. 2000) (finding that expert testimony regarding what is a trade secret and what constitutes misappropriation is inadmissible as a legal conclusion); *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, No. Civ-03-3302RHKFLN, 2005 WL 1923811, *7-9 (D. Minn. 2005) (experts may not testify that information constitutes trade secrets, but may testify as to their knowledge of relevant information). Mr. Phillips may testify to the facts surrounding Doane's secreting of the information from Pratt and other relevant facts relating to the insurance industry, but he may not testify in terms of legal conclusions. *United States v. Pettigrew*, 77 F.3d 1500, 1515-16 (5th Cir. 1996) (stating that "Rule 704 was not intended to allow a witness to testify regarding legal conclusions").

   3. ". . . Easley [Donna Easley Doane] raided the employee staff of Pratt . . . , and enlisted their assistance in copying and soliciting the property of Pratt . . . ."

The Easley Defendants object to this opinion on the ground that it is irrelevant to any matter in controversy, as there are no claims in this litigation that allege Doane acted unlawfully when she hired staff from Pratt. The Easley Defendants also object on the ground that Mr. Phillips implies that the information copied by the Easley Defendants was a "trade secret" without specifically discussing the factors that weigh on this determination. For the reasons listed in the discussion of opinion number two, the Court finds that Mr. Phillips did consider the "trade secret" factors in making his determination. However, to the extent Mr. Phillips' report attempts to characterize the

information at issue as protected, e.g., "soliciting the property of Pratt," the Easley Defendants

objection is SUSTAINED.[9]  Pratt argues that the statement is relevant as it demonstrates "a

continuing course of conduct by Doane in the same surreptitious manner in which she acquired the

thousands of copies of documents and then secreted them from Plaintiff."  (Dkt. No. 107 at 6).  The

Court agrees that the statements, to the extent they are tailored to refrain from characterizing the

documents as "protected," are admissible and helpful to the jury.

4.      ". . . Easley [Donna Easley Doane] cost the PIA [her pre-Pratt employer] during this
        1997 year production, and she came to Pratt Agency in 1998 with a losing book of
        business . . . ."

The Easley Defendants object to this opinion on the ground that Ms. Doane's success at her

pre-Pratt employment is utterly irrelevant to the circumstances of her departure in early 2005.  Pratt

claims that this opinion is relevant, as Doane claims that she brought her, presumably profitable,

"book of business" from PIA—her pre-Pratt employer.  Pratt claims this opinion is relevant in

illustrating that Doane was not successful before joining Pratt and that Doane would not have been

successful without acquiring information from Pratt.  The Court agrees with Pratt and OVERRULES

the Easley Defendants objection to opinion four.

5.      ". . . Pratt markets, management skills and staff enabled . . . [Donna Easley Doane]
        to leave the Pratt Agency with $4,549,042 in premiums which produced
        commissions rightfully owned by Pratt . . . ."

The Easley Defendants object to statement number five on the ground that the statement is

irrelevant to whether the documents were protected.  Pratt, on the other hand, argues that, in light

of Doane's "seeming assertion that what she stole was her own information and book of business,"

the statement is relevant.  The Court agrees with Pratt and OVERRULES the Easley Defendants

_____

[9] It should be noted that this does not mean that the entirety of the opinion will be excluded.

objection to opinion five, as the statement is relevant to establishing how Doane's "book of business" became profitable and what Doane believed regarding the documents' protected status. However, as the Easley Defendants assert in their Reply, to the extent Mr. Phillips' statement opines that the information was "rightfully owned by Pratt," the objection is SUSTAINED for the same reasons discussed above in reference to opinion number two.

6.     "That she [Donna Easley Doane] pirated Pratt business is shown by the decline in the Pratt displays of premiums and commissions for year ending 2005, her first year after departing Pratt and taking the business."

The Easley Defendants object to this statement on the ground that proof of "pira[cy]"[10] cannot be shown by a "decline in the Pratt displays of premiums and commissions." Pratt, on the other hand, argues that the immediate loss in premiums and commissions shows that the information taken was very valuable—a factor that is relevant to trade-secret status. Pratt also claims the statement shows Doane "used" the stolen information to her benefit and to Pratt's detriment. The Court OVERRULES the Easley Defendants' objection to the extent they argue the statement is irrelevant. However, for the reasons discussed in connection with opinion number two, any legal conclusions offered by Mr. Phillips that imply the information contains trade secrets, e.g. "pirated," are improper

7.     "[A] producer could not have booked this much business during a short period in a start-up agency without the advantage of the confidential information contained in the customer files belonging to Pratt."

The Easley Defendants object to this opinion on the ground that it 1) implies illegal conduct by Ms. Doane without a reasoned explanation—"confidential"—2) concerns nontechnical evidence that is not beyond the jury's ken and is therefore unhelpful to a jury, and 3) is conclusory with no

---

[10]The Court finds that the term "pirated" implies the protected status of the documents.

supporting facts or data.  For the reasons articulated in the Court's discussion of opinion number two, the Court OVERRULES the Easley Defendants' objection that Mr. Phillips' statements and conclusions are not based on a reasoned explanation.  Likewise, the Easley Defendants' objection that the statement is conclusory is OVERRULED.  Mr. Phillips' has based his opinion on his experience and knowledge of what is needed to collect, analyze, assimilate, and assemble information necessary to operate an insurance agency.  However, for the reasons discussed in connection with opinion number two, Mr. Phillips' legal conclusions, e.g., "confidential information," are inappropriate and unhelpful to the jury.  The Easley Defendants' objection on that ground is SUSTAINED.  Again, it should be noted that this does not mean that the entirety of Mr. Phillips' statement will be excluded.

8.      "[Donna Easley Doane] was aided and abetted in this illegal transaction of Pratt's property by employees of Trinity Universal Insurance . . . ."

The Easley Defendants object to statement number eight on the ground that 1) whether Trinity Universal Insurance's employees "aided and abetted" is a simple, nontechnical factual question the jury does not need expert assistance on—if the jury finds that the documents were protected and 2) in light of the fact that the Trinity Defendants have been dismissed from this suit, testimony on whether they "aided and abetted" Doane is irrelevant.  The Easley Defendants objection to statement number eight is SUSTAINED on the ground that whether Trinity Universal "aided and abetted" Doane is irrelevant in light of the fact that the Trinity Defendants have been dismissed from this lawsuit.

9.      " [T]he misappropriation of the Pratt's expiration property caused a loss . . . to be calculated by a damage expert . . . ."

The Easley Defendants assert the same objections to statement number nine as they did to

12

statement number six—Mr. Phillips' does not show that the information was actually "protected" and therefore cannot show that the unlawful conduct caused damages.  For the reason stated in connection with opinions six and two, the Court SUSTAINS the Easley Defendants' objection to the extent Mr. Phillips offers a legal conclusion, e.g., "misappropriation."  However, on the issue of causation, as long as evidence of the documents' protected nature is presented, either by Mr. Phillips or through other evidence, Mr. Phillips' conclusion that damages were suffered by Pratt is admissible.

> 10.     "[Judy] Turner misappropriated the trade secrets of the Pratt Agency in her unauthorized transfer of business in violation of her employment contract."

The Easley Defendants object to this statement on the ground that, once again, Mr. Phillips implies—indeed, expressly states—that the documents were trade secrets, and the jury does not need Mr. Phillips' assistance on this issue.  While, as discussed above, the Easley Defendants' objection is SUSTAINED on this ground, exclusion is also proper on irrelevancy grounds to the extent the statement discusses Pratt's breach of contract claim against Turner—which has been dismissed. It is so ORDERED.

Signed this 30th day of December, 2009.


_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE